Larry S. ENZOR *v.* STATE of Arkansas

CR 77-182                                     559 S.W. 2d 148

Opinion delivered December 12, 1977
(Division I)
[Rehearing denied January 16, 1978.]

*Greene, Cottrell & Craig,* by: *J. H. Cottrell* and *Jay Fred Friedman,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Jackson Jones,* Asst. Atty. Gen., for appellee.

GEORGE HOWARD, JR., Justice. The question to be resolved in this case is essentially whether the search of appellant's automobile and the seizure of a substantial quantity of marijuana are compatible with the prohibition against unreasonable search and seizure under the Fourth Amendment to the United States Constitution which is made applicable and binding upon a State and its political subdivisions under the due process clause of the Fourteenth Amendment to the United States Constitution.

## THE FACTS

Larry Steve Enzor, appellant, was charged by information on April 22, 1976, with possession with intent to deliver a controlled substance in violation of Act 590 of 1971, as amended and generally referred to as the Uniform Controlled Substances Act.

The charge followed an incident taking place on March

15, 1976, in which appellant was routinely stopped by an officer of the Arkansas State Police for a malfunction in his right taillight assembly.[1] While advising appellant of the malfunction and checking appellant's driver's license, the officer observed a plastic box extending from beneath the arm rest of the front seat which contained approximately five marijuana cigarettes. After appellant stepped out of his vehicle and was in the process of securing his registration certificate, the officer saw a small quantity of green vegetable material on the floorboard which also appeared to be marijuana. The officer advised appellant that appellant was under arrest for possession of marijuana and that appellant's vehicle would have to be searched, and if appellant, insisted, a search warrant could be obtained; however, on the other hand, appellant could consent to a search. After hesitating for a moment, appellant offered the officer the key to the trunk, but the officer refused the key and advised appellant that appellant could open thr trunk if he wished.[2]

After appellant opened the trunk to his automobile, the officer discovered 193.44 pounds of marijuana in brick form.

On February 23, 1977, appellant was found guilty as charged and was sentenced to the Arkansas Department of Correction for a term of three years. Appellant waived a jury trial.

Appellant seeks reversal of the judgment and conviction on two grounds: (1) The trial court erred in denying appellant's motion to suppress and in admitting into evidence the fruits of an alleged unlawful search and seizure, and (2) That there is no substantial legal evidence to support the findings and judgment of the court. A consideration of these grounds necessarily requires a consideration of the following

---

[1]It is conceded by the State that the right taillight assembly was not totally inoperative and a traffic citation was not warranted or intended. The officer simply wanted to advise the appellant of the malfunction and issue a compliance summons.

[2]Appellant is a college graduate, having majored in Criminal Justice and was an employee, at one time, as a counselor in a Tennessee penal institution. Moreover, appellant stated to the officer during the conversation relating to the search of appellant's vehicle: "Yeah, I know, I'm a lawyer. I might as well open the trunk. You know what's in there anyway."

questions: (1) Whether the initial stop and detention of appellant was lawful?, (2) Whether the seizure of articles from the passenger compartment of appellant's automobile was lawful? and, (3) Whether the search of the trunk of appellant's automobile was lawful?

## THE INITIAL STOP AND DETENTION

Appellant stresses that the officer and his civilian passenger[3] testified that there were two brake lights functioning on the left rear of appellant's vehicle and one of two brake lights functioning on the right rear. Consequently, appellant was in complete compliance with the requirements of Arkansas Statutes Annotated § 75-711 (1975 Supp.), which merely requires at least two stop lamps, thus, the initial stop and detention of appellant was unjustified and accordingly, unlawful.

This argument is neither persuasive nor convincing in an effort to show that the officer had no legal basis for stopping and detaining appellant inasmuch as Arkanaas Statutes Annotated § 75-2108 (1) (1975 Supp.) provides in part as follows:

"The Director, uniform officers and troopers of the Department of Arkansas State Police . . . may, at any time, upon reasonable cause to believe that a motor vehicle is unsafe or not equipped as required by law or that its equipment is not in proper adjustment or repair, require the driver of such motor vehicle to stop and submit such vehicle to an inspection . . . "

See also, *Perez* v. *State*, 260 Ark. 438, 541 S.W. 2d 915.

We, therefore, conclude that the initial stop and detention of appellant were justified and lawful.

## THE PLAIN VIEW DOCTRINE

In *Coolidge* v. *New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022,

[3]The civilian passenger in the officer's vehicle was a state employee who had made application for a position with the Arkansas State Police and was getting experience in working traffic on state highways.

the United States Supreme Court reaffirmed the fundamental proposition that searches and seizures conducted without a warrant are unreasonable per se under the Fourth Amendment to the United States Constitution, subject, however, to a few established exceptions. See: *Gordon v. State,* 259 Ark. 134, 529 S.W. 2d 330.

However, in order for a seizure to be judged permissible under the plain view doctrine four standards must be met:

1. A valid instruction by police officers; and,

2. An inadvertent discovery; and,

3. An immediate recognition of contraband; and,

4. Exigent circumstances.

See, Rule 14.4, Arkansas Rules of Criminal Procedure, which provides:

> "An officer who, in the course of otherwise lawful activity observes the nature and location of things which he reasonably believes to be subject to seizure, may seize such things."

We conclude, that the four standards have been met by the state since the evidence clearly shows that the officer had a right to be in the position from where he viewed the contraband, the discovery was inadvertent and unanticipated, the officer's training in narcotics and previous experiences in making arrests on marijuana violations enabled the officer to recognize immediately the vegetable materials and the cigarettes as marijuana, and finally, the appellant was a non-resident of the State of Arkansas enroute from Texas to Memphis, Tennessee. Consequently, the seized contraband from the passenger compartment of appellant's vehicle was lawful.

## THE CONSENT

It is well settled that a search that is conducted pursuant to consent does not violate the proscription against searches

conducted without a warrant issued upon probable cause under the Fourth and Fourteenth Amendments to the United States Constitution. *Davis* v. *U.S.,* 328 U.S. 582, 66 Sup. Ct. 1256; *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 93 Sup. Ct. 2041. See, Rule 11.1 Arkansas Rules of Criminal Procedure which specifies:

> "An officer may conduct searches and make seizures without a search warrant or other color of authority if consent is given to the search or seizure."

After an officer took possession of the plastic box containing the marijuana cigarettes and the vegetable materials from the floorboard, appellant was advised that he was under arrest for possession of marijuana and was further advised of his rights. The officer informed appellant that appellant's vehicle would have to be checked and further advised that this could be done with a search warrant or it could be done with appellant's permission. Appellant voluntarily opened the trunk of his automobile where the officer discovered the 193.44 pounds of marijuana.

Appellant makes an extended attack upon the application of the concept of consent to the search and seizure of the marijuana from the trunk of his automobile by emphasizing in his brief:

> "Consent to a search which amounts to a waiver of constitutional rights must be freely, voluntarily and knowingly made without duress or coercion in any manner. A mere showing of acquiescence to a claim of lawful authority is not enough; the consent or waiver must be shown by the state by clear and positive testimony and there must be proof that there was no duress or coercion either actual or implied."

But appellant's argument here is likewise neither convincing nor persuasive. In *Schneckloth* v. *Bustamonte,* supra, the United States Supreme Court observed:

> ". . . we cannot accept the position . . . that proof of knowledge of the right to refuse consent is a necessary prerequisite in demonstrating a voluntary consent.

Rather it is only by analyzing all of the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary of coerced."

In *U.S.* v. *Faruolo,* 506 F. 2d 490 (2d Cir. 1974), the Court held that no coercion was found when the officer told the defendant that he could refuse to permit a search, but a warrant would be obtained if he refused. See, *U.S.* v. *Gavic,* 520 F. 2d 1346 (8th Cir. 1975).

We conclude, therefore, that because of the prior experience of appellant, his age, intelligence and education, the consent given for the search of his trunk was voluntary and uncoerced.

The trial court having ruled that the evidence was admissible and from such evidence, the trial court concluded that appellant was guilty, we, therefore, find that there is substantial evidence to sustain the trial court's finding of guilt.

## ATTORNEY-TESTIFYING

The Arkansas Reports are replete with cases where this Court has registered its disapproval of an attorney testifying in an action in which he is an advocate. See: *Canal Insurance Company* v. *Hall,* 259 Ark. 797, 536 S.W. 2d 702 (1976); *Watson* v. *Alford,* 255 Ark. 911, 503 S.W. 2d 897 (1974).

In this action, one of appellant's attorneys testified in behalf of appellant. We must again take this opportunity to reiterate strongly our disapproval of an attorney testifying in an action in which he is advocate. An attorney who is to testify in an action should withdraw from the litigation. On the other hand, if an attorney is going to serve as an advocate for his client, he should refrain from testifying in the action.

Affirmed.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and FOGLEMAN, JJ.