Mark TRAVIS *v.* STATE of Arkansas

CR 97-1166 959 S.W.2d 32

Supreme Court of Arkansas
Opinion delivered January 8, 1998

*Val P. Price,* for appellant.

*Winston Bryant,* Att'y Gen., by: *David R. Raupp,* Sr. Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Mark Travis, the appellant, was charged with being a felon in possession of a firearm in violation of Ark. Code Ann. § 5-73-103(a)(1) (Repl. 1997). Mr. Travis contended his arrest was unlawful and that evidence (the firearm) seized as a result of his arrest should have been suppressed. The Trial Court denied the motion to suppress, and Mr. Travis entered a conditional plea of guilty pursuant to Ark. R. Crim. P. 24.3(b), reserving the right to appeal the Trial Court's suppression ruling. Mr. Travis received a 12-month "suspended imposition of sentence" with credit for five months time served. The Court of Appeals reversed the Trial Court's suppression ruling. *Travis v. State,* 58 Ark. App. 320, 954 S.W.2d 277 (1997). We granted the State's petition to review the decision of the Court of Appeals and now affirm the Trial Court.

When we grant a petition for review pursuant to Ark. Sup. Ct. R. 2-4, we treat the appeal as if it were filed in this Court originally. *Arkansas State Hwy. Comm'n v. Post,* 330 Ark. 369, 955 S.W.2d 496 (1997); *Slaton v. Slaton,* 330 Ark. 287, 956 S.W.2d 150 (1997).

In reviewing a ruling denying a defendant's motion to suppress, we make an independent determination based on the totality of the circumstances and view the evidence in the light most favorable to the State. We reverse only if the Trial Court's ruling is clearly against the preponderance of the evidence. *Burris v. State,* 330 Ark. 66, 954 S.W.2d 209 (1997); *Wofford v. State,* 330 Ark. 8, 952 S.W.2d 646 (1997). Applying these principles, we conclude the Trial Court correctly denied Mr. Travis's suppression motion.

At the suppression hearing, Lawrence County Deputy Sheriff Glen Smith testified that he was on duty on the afternoon of February 24, 1996, when he observed Mr. Travis's truck heading

northward on U.S. Highway 67. The Texas license plate on the truck did not display expiration-date stickers. Believing that the license plate was required to display a sticker, Deputy Smith stopped the truck and approached it. Mark Travis's nephew, James Travis, was in the driver's seat, and Mark Travis was in the passenger's seat. Deputy Smith discovered that James Travis had been driving the truck on a suspended driver's license and that Mark Travis had a Texas felony record and had had his driver's license suspended as well. Eventually, Deputy Smith realized that Texas law did not require a Texas license plate to display an expiration sticker and that Mr. Travis's truck properly displayed the type of sticker on the front window as required by Texas law.

Deputy Smith took James Travis into custody for driving on a suspended license. As neither James Travis nor Mark Travis was licensed to drive, Deputy Smith called for a tow truck to transport the truck from the scene. Deputy Smith placed the Travises in his unit and returned to the truck to secure it for towing. When Deputy Smith opened the door in order to roll up the window, he observed in plain view a .22 rifle "sticking out from behind the seat." Deputy Smith then arrested Mr. Travis for being a felon in possession of a firearm.

Mr. Travis's argument is that the rifle, discovered as a result of the stop he considers to have been unlawful, should be suppressed under the "fruit of the poisonous tree doctrine." *See Wong Sun v. United States*, 371 U.S. 471 (1963). It is not disputed that Deputy Smith made the stop on the basis of his belief that the Texas license plate was required to display an expiration sticker and that the truck was thus being operated in violation of the law. Mr. Travis does not contend that Deputy Smith's action in stopping the truck was pretextual. His contention is that, because the deputy's understanding of the Texas licensing requirements was erroneous, there was no "probable cause," or even "reasonable suspicion," to make the stop.

 It is well settled that "a police officer may stop and detain a motorist where the officer has probable cause to believe that a traffic violation has occurred." *Burris v. State*, 330 Ark. 66, 71, 954 S.W.2d 209 (1997). *See Whren v. United States*, 116 S. Ct.

1769 (1996); *Wilburn v. State*, 317 Ark. 73, 876 S.W.2d 555 (1994). *See also* Ark. R. Crim. P. 4.1(a) (permitting warrantless arrest if officer has "reasonable cause" to believe that defendant has committed "any violation of law in the officer's presence").

■ "[T]he relevant inquiry is whether [the officer] had probable cause to believe that [the defendant] was committing a traffic offense at the time of the initial stop." *Burris v. State*, 330 Ark. at 72.

> We have previously explained that probable cause exists when the facts and circumstances within an officer's knowledge are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected. *Hudson v. State*, 316 Ark. 360, 872 S.W.2d 68 (1994); *Johnson v. State*, 299 Ark. 223, 772 S.W.2d 322 (1989). In assessing the existence of probable cause, our review is liberal rather than strict. *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997).

*Burris v. State*, 330 Ark. at 72.

As mentioned, Deputy Smith testified that he stopped Mr. Travis's truck because he believed the Texas license plate was required to display an expiration sticker and that the truck was thus being operated in violation of the law. Arkansas Code Ann. § 27-14-704 (Repl. 1994) specifies the instances in which a vehicle licensed and registered in another state may be operated in Arkansas. One of the requirements is that the out-of-state vehicle comply with the other state's applicable registration laws.

■ Deputy Smith believed that the law of Texas, like the law of Arkansas, required license plates to display expiration stickers. Although the deputy was erroneous, the question of whether an officer has probable cause to make a traffic stop does not depend upon whether the defendant is actually guilty of the violation that was the basis for the stop. As we said in the *Burris* case, "all that is required is that the officer had probable cause to believe that a traffic violation had occurred. Whether the defendant is actually guilty of the traffic violation is for a jury or a court to decide, and not an officer on the scene." *Burris v. State*, 330 Ark.

at 73, *citing Whren v. United States, supra; State v. Jones*, 310 Ark. 585, 839 S.W.2d 184 (1992).

■ The facts of this case are unlike those found in *Delaware v. Prouse*, 440 U.S. 648 (1979), which formed the foundation of the Court of Appeals decision in this case. There was no issue of reasonable or probable cause in the *Prouse* decision because that case involved a "random" traffic stop. We cannot say that Deputy Smith lacked reasonable cause to stop Mr. Travis's truck simply because the truck ultimately was found to have been operated in compliance with Texas law. At the time of the stop, Deputy Smith reasonably, albeit erroneously, believed the license plate was required to display expiration stickers. That the license plate was later found to have been in compliance with Texas law does not mean that the deputy lacked probable cause to make the stop. *See People v. Glick*, 250 Cal.Rptr. 315, 319, 203 Cal.App.3d 796 (Cal.App. 1 Dist. 1988)(holding officer's stop of New Jersey vehicle was reasonable even though based on officer's erroneous understanding of New Jersey registration laws and stating "An officer cannot reasonably be expected to know the different vehicle registration laws of all the sister states.").

Affirmed.