Frank WIMBLEY *v.* STATE of Arkansas

CA CR 99-434                                    3 S.W.3d 709

Court of Appeals of Arkansas
Division II
Opinion delivered November 10, 1999

*Daniel G. Ritchey*, for appellant.

*Mark Pryor*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellee.

TERRY CRABTREE, Judge. The Mississippi County Circuit Court convicted the appellant, Frank Wimbley, of possession of a controlled substance, cocaine, and sentenced him to three years in the Arkansas Department of Correction, followed by seven years' suspended imposition of sentence. In addition, the court found appellant guilty of misdemeanor possession of marijuana and fined him $1,000. On appeal, appellant claims that the

circuit judge erred by denying his motion to suppress evidence. We agree and reverse.

The Blytheville Police Department arrested appellant on April 28, 1998, shortly after noon in the parking lot of the Best Western Motel in Blytheville, Arkansas. The police went to the motel in response to a suspicious-vehicle report. The motel's clerk told Officer Gary Conyers that a truck had been parked all night in front of a rented, but unoccupied, room. Officer Conyers inspected a new Ford F-150 that the motel employee had reported and saw that it did not have a license plate. Officer Conyers then used the motel's telephone to call the police department's dispatcher and report the truck's vehicle identification number (VIN). The dispatcher informed Officer Conyers that there was no registration information for the truck.

At that time, Officer Randy Sipes saw a red Toyota car arrive in the parking lot. He told Officer Conyers that two of the four people in the car were getting out of the car and into the truck. The two officers went outside, and the car began to drive away, but a third officer, Detective David Flora, stopped it. Officer Conyers went to assist Detective Flora while the truck drove around the motel, which was not the most direct route out of the parking lot. Officer Sipes thought that the truck's route was suspicious because it was as if the truck's occupants were trying to avoid the officers. Officer Sipes stopped the truck as it passed the motel's lobby. Officer Sipes stated that he stopped the truck because it did not have a license plate and had not been registered. Moreover, Officer Sipes suspected that the truck had been stolen because the clerk had reported that it had been in the motel's parking lot all night, and the officers recovered "a lot of stolen vehicles from motel lots."

Detective Flora suggested that Officer Conyers assist Officer Sipes, who was getting the driver out of the truck. Officer Conyers approached the truck and told appellant, who was the passenger, to get out of the truck. As appellant got out, Officer Conyers told appellant to put his hands on the truck. Officer Conyers began to search appellant for weapons because he was concerned that the truck was stolen and wanted to protect himself. As Officer Conyers began to search appellant, Officer Conyers heard Officer Sipes say, "What was that?" and "Drop it." Officer Conyers, not knowing what appellant had in his hand, stepped back and saw appellant

throw an object away·from the truck. During the suppression hearing, Officer Sipes testified that appellant dropped a plastic baggie into the bed of the truck and, when asked about what he had dropped, picked·up the baggie and threw it into the parking lot. Officer Sipes asked another officer to retrieve the baggie, which contained a controlled substance, cocaine. Officer Conyers continued to search appellant and found a bag of marijuana in the front of his coveralls.

■ On review of a trial court's denial of a motion to suppress, this court makes an independent examination based on the totality of the circumstances, and will reverse only if the trial court's ruling was clearly against a preponderance of the evidence. *Muhammad v. State*, 337 Ark. 291, 988 S.W.2d 17 (1999). In making that decision, the Court reviews the evidence in the light most favorable to the State. *Id.*

■ Arkansas Rule of Criminal Procedure 4.1 (a)(iii) provides that a law enforcement officer may make a warrantless arrest of a person when the officer has reasonable cause to believe that the person has committed any violation of law in the officer's presence, including traffic offenses. *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998). Here, the officers had reasonable cause to believe that the driver of the truck was violating Ark. Code Ann. § 27-14-304 (Repl. 1994), by operating a vehicle without a license plate, which is an unclassified misdemeanor. Although the driver might have had a valid defense if he had been charged with violating this statute, the officers nevertheless had reasonable cause to stop him. "[T]he question of whether an officer has probable cause to make a traffic stop does not depend upon whether the defendant is actually guilty of the violation that was the basis of the stop." *Travis*, 331 Ark. at 10, 959 S.W.2d at 34. The officers saw the driver operating the truck without a license plate and thus had reasonable cause to stop him.

■ After the police stopped the truck, Officer Sipes asked the driver to produce his driver's license, and the driver did so. Upon request, the driver also showed Officer Sipes papers to verify that he had just purchased the truck. Officer Sipes told the driver to step out of the truck. Then, Officer Conyers approached the truck and ordered appellant to get out. In *Maryland v. Wilson*, 519 U.S. 408, 415 (1997), the United States Supreme Court held that "an officer

making a traffic stop may order passengers to get out of the car pending completion of the stop." Officer Conyers told appellant to place his hands on the truck while he searched appellant. Once an officer is lawfully in a person's presence, he may search the person for weapons if he has a reasonable suspicion that the person is armed and dangerous. *See, e.g., Wright v. State*, 300 Ark. 259, 778 S.W.2d 944 (1989); Ark. R. Crim. P. 3.4. Officer Conyers testified that he searched appellant for weapons because the officers "had a concern that this vehicle was stolen." The motel clerk had told Officer Conyers that the truck had been parked in the motel's parking lot all night, and Officer Conyers knew that the truck did not have a license plate and that many stolen vehicles had been recovered from motel parking lots. Moreover, the truck appeared to be avoiding the officers when it drove around the motel after Detective Flora stopped the red car.

■ On the other hand, before Officer Conyers searched appellant, the officer knew that the truck was not stolen because the driver produced papers verifying his recent purchase. Officer Conyers needed "reasonable suspicion" that appellant was carrying a weapon before he could search appellant. *See Wright, supra.* "Reasonable suspicion" is defined by our rules of criminal procedure as:

> [A] suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

Ark. R. Crim. P. 2.1.

Officer Conyers testified that when he first approached the unoccupied truck at the motel that he "did not find anything suspicious" in it. He stated that "[t]he truck was pretty clean." He also testified that the truck was parked in front of the rented, unoccupied room and that the curtains to the room were open so that he could see in the room. Conyers did not report that he saw anything suspicious in the room from outside the window. Furthermore, Officer Conyers conducted his search of appellant at noon, clearly during daylight hours. Based upon the totality of the circumstances, we believe that Officer Conyers lacked the requisite reasonable suspicion to search appellant for weapons. The question

as to whether the truck had been stolen was answered upon Officer Sipes's encounter with the driver before Officer Conyers even approached the passenger's side of the truck. Knowing that the truck was not stolen and having no other reason to believe that appellant was armed, Officer Conyers exceeded his authority by searching appellant.

■ After Officer Conyers began his frisk of appellant, appellant tossed a baggie, which contained a controlled substance, into the truck bed and then into the parking lot. The officers seized the baggie from the parking lot. Then Officer Conyers continued to search appellant and found a bag of marijuana in the front of his coveralls. These events resulted in appellant's arrest.

■ In conclusion, we hold that the police acted reasonably in responding to the motel employee's report of a suspicious truck and in stopping and detaining the truck and its two occupants to determine whether the vehicle was stolen. However, our independent review leads us to conclude that Officer Conyers lacked reasonable suspicion to conduct a search of appellant. Therefore, the circuit court should have granted appellant's motion to suppress, and we reverse appellant's conviction and sentence.

Reversed.

HART and MEADS, JJ., agree.