Cite as 2023 Ark. App. 220

# ARKANSAS COURT OF APPEALS

DIVISION II

No. CR-22-473

| | | |
|---|---|---|
| WYNTON ERBY | | **Opinion Delivered** April 12, 2023 |
| | APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT |
| V. | | [NO. 26CR-21-71] |
| STATE OF ARKANSAS | | HONORABLE RALPH C. OHM, JUDGE |
| | APPELLEE | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Wynton Erby entered a conditional plea of guilty to one count of possession of a firearm by certain persons, a Class D felony, in violation of Arkansas Code Annotated § 5-73-103(c)(2).[1] His conditional plea reserved his right to appeal from the circuit court's denial of his motion to suppress physical evidence seized during a traffic stop. On appeal, Erby contends that the officer who initiated the traffic stop of the vehicle he was a passenger in lacked probable cause, and all evidence seized during the subsequent search of the vehicle is fruit of the poisonous tree. We affirm.

On December 15, 2020, Trooper Zach Guest of the Arkansas State Police pulled over a white Chrysler 300 for alleged traffic violations. Trooper Guest testified that, while on patrol, he ran the tags of the vehicle, and the Arkansas Crime Information Center/National Crime Information Center (ACIC/NCIC) online insurance-verification database reported that the system was unable to verify insurance for the vehicle, and the car's insurance status came back as "unconfirmed." Trooper Guest

---

[1](Repl. 2016).

proceeded to pull over the vehicle. Trooper Guest stated that while he spoke with the occupants, he could smell a strong odor of marijuana coming from the vehicle. Both occupants, Erby and the driver, Breagan Butler, were asked for identification. Erby did not have an ID; he was asked to exit the vehicle and was patted down by Trooper Guest. A firearm—a Glock—was discovered between Erby's legs. Upon questioning, Erby admitted that he is a felon. He was then placed in custody. Evidence discovered during the traffic-violation investigation led the State to charge Erby with possession of a firearm by certain persons. On April 7, 2021, Erby filed a motion to suppress the evidence seized during the traffic stop, arguing that Trooper Guest lacked the requisite probable cause of a traffic violation being committed to have initiated the stop. Erby asserted that the ACIC/NCIC system returning an insurance status of "unconfirmed" was insufficient to provide probable cause. He additionally argued that the ACIC/NCIC database was not reasonably reliable to form the basis for probable cause. The circuit court held a hearing on the suppression motion on February 16, 2022, and subsequently denied Erby's motion. On April 6, Erby entered a conditional plea of guilty pursuant to Arkansas Rule of Criminal Procedure 24.3(b), reserving the right to appeal the denial of his suppression motion. The circuit court sentenced Erby to three years' incarceration in the Arkansas Department of Correction. Erby filed a timely notice of appeal and now argues that the circuit court erred by denying his motion to suppress.

When reviewing a circuit court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the circuit court.[2] A finding is clearly erroneous when, even

---

[2]*Bathrick v. State*, 2016 Ark. App. 444, 504 S.W.3d 639.

if there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with a definite and firm conviction that a mistake has been committed.[3] We defer to the circuit court's superior position in determining the credibility of the witnesses and resolving any conflicts in the testimony.[4]

In denying Erby's motion to suppress, the circuit court found "that whenever an officer runs somebody through ACIC/NCIC, and it pops up that the license is not valid or can't be confirmed, or the insurance can't be confirmed; that would be sufficient for the officer to at least inquire as to the validity and the presence of the insurance." The circuit court further noted,

> [A]ccording to the testimony I've been given, it says here "the insurance was unconfirmed and please rely on insurance information provided by the driver." Well, the only way you ever get to relying on the insurance information provided by the driver, is to stop the driver and inquire. So the Court is going to find that the officer acted in good faith whenever he made the stop.

On appeal, Erby argues that Trooper Guest lacked probable cause to initiate a traffic stop that was based on an "unconfirmed" insurance status in the ACIC/NCIC database.

A police officer may stop and detain a motorist when the officer has probable cause to believe that a traffic violation has occurred.[5] Probable cause exists when the facts and circumstances within an officer's knowledge are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected.[6] In assessing the existence of probable cause,

---

[3]*Prickett v. State*, 2016 Ark. App. 551, 506 S.W.3d 870.

[4]*Pickering v. State*, 2012 Ark. 280, 412 S.W.3d 143.
[5]*Pokatilov v. State*, 2017 Ark. 264, 526 S.W.3d 849.

[6]*Hudson v. State*, 316 Ark. 360, 872 S.W.2d 68 (1994).

our review is liberal rather than strict.[7]  The relevant inquiry is whether the officer had probable cause to believe that the defendant was committing a traffic offense at the time of the initial stop.[8]  Whether a police officer has probable cause to make a traffic stop does not depend on whether the driver was actually guilty of the violation that the officer believed to have occurred.[9]

Arkansas Code Annotated section 27-22-104(a)(1)(b)[10] provides that it is unlawful for a person to operate a motor vehicle within this state unless the motor vehicle and the person's operation of the motor vehicle are each covered by an insurance policy issued by an insurance company authorized to do business in this state.  Section 27-22-104(a)(2)(A)(ii) provides that there is a rebuttable presumption that the motor vehicle or its operation is uninsured if the online insurance-verification system fails to show current insurance coverage for the driver or the insured.

Erby's sole argument on appeal has already been addressed by our court.  In *Small v. State*,[11] this court affirmed the denial of a motion to suppress when the officer initiated a traffic stop after he ran the defendant's tags and discovered that the defendant's insurance had been canceled.  We expressly held that "the lack of insurance information in the database was sufficient to provide [the officer] with probable cause to believe that a traffic violation had occurred.[12]  Likewise, in *Cagle v.*

---

[7]*Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997).

[8]*Pokatilov*, *supra*.

[9]*Stuart v. State*, 2017 Ark. App. 356, 525 S.W.3d 494.

[10](Repl. 2014).
[11]2018 Ark. App. 80, 543 S.W.3d 516.

[12]*Id*. at 9, 543 S.W.3d at 522.

*State*,[13] pursuant to *Small*, the circuit court held that "the lack of insurance information in the database was sufficient to provide [the officer] with probable cause to believe that a traffic violation had occurred." On appeal, we held that "the circuit court's reliance on this fact to deny Cagle's motion to suppress is affirmed."

Erby attempts to distinguish his case from the above-cited precedent; however, we are unpersuaded. We find no merit in his contention that while a "canceled" status provides probable cause, a returned status of "unconfirmed" does "not rise to the level of probable cause." Arkansas Code Annotated section 27-22-104(a)(2)(A)(ii) states that a car or driver is presumed to be uninsured if the online-verification system "fails to show current insurance coverage." Despite Erby's argument, both "unconfirmed" and "canceled" fail to provide proof of current insurance coverage. Therefore, we find no merit to his argument and affirm the denial of his suppression motion.

Affirmed.

WOOD, J., agrees.

THYER, J., concurs.

**CINDY GRACE THYER, Judge, concurring**. I believe Trooper Zach Guest violated Wynton Erby's constitutional right to be free from an unwarranted search and seizure when he stopped the vehicle in which Erby was a passenger without sufficient probable cause to believe a crime was being committed. The majority believes otherwise. However, because Erby has not challenged the circuit court's determination that the good-faith exception to the exclusionary rule applies, I must concur with the majority's conclusion that Erby's conviction should be affirmed.

---

[13]2019 Ark. App. 69, 571 S.W.3d 47.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court of the United States has held that temporarily detaining a person during a traffic stop is a "seizure" of "persons" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). A police officer's decision to stop a person while traveling in a motor vehicle is therefore subject to the "constitutional imperative" that the stop not be "unreasonable" under the circumstances. *Whren v. United States*, 517 U.S. 806, 809–10 (1996).

As the majority notes, in order to make a valid traffic stop, an officer must have probable cause to believe there has been a violation of a traffic law. *Prickett v. State*, 2016 Ark. App. 551, 506 S.W.3d 870. Probable cause is defined as "facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected." *Id*. at 3, 506 S.W.3d at 872. The degree of proof needed to sustain a finding of probable cause is less than the proof needed to sustain a criminal conviction; in assessing whether probable cause exists, the appellate review is liberal rather than strict. *Baker v. State*, 2022 Ark. App. 53, 640 S.W.3d 431.

It is undisputed that all Arkansas drivers are required to have valid car insurance. Arkansas Code Annotated Section 27-22-104(a)(1) provides that it is unlawful for a person to operate a motor vehicle within this state unless the motor vehicle and the person's operation of the motor vehicle are each covered by a certificate of self-insurance or an insurance policy issued by an insurance company authorized to do business in this state.

At issue in this case is whether Trooper Guest had probable cause to believe that the vehicle in which Erby was a passenger was an uninsured vehicle in violation of section 27-22-104(a)(1). Guest testified at the suppression hearing that he ran the tags of the vehicle in which Erby was a passenger through the ACIC/NCIC online insurance verification database. The database returned a response of "unconfirmed." What the majority fails to mention about the ACIC/NCIC records, however, is that the printout reflecting the "unconfirmed" status of the vehicle also included the following statement:

> THE ARKANSAS ONLINE INSURANCE VERIFICATION SYSTEM (AOIVS) WAS UNABLE TO VERIFY INSURANCE FOR THIS VEHICLE. VALID INSURANCE POLICIES MAY EXIST THAT ARE NOT AVAILABLE TO THE SYSTEM AT THIS TIME. PLEASE RELY ON INSURANCE INFORMATION PROVIDED BY DRIVER.

Nevertheless, relying on *Small v. State*, 2018 Ark. App. 80, 543 S.W.3d 516, and *Cagle v. State*, 2019 Ark. App. 69, 571 S.W.3d 47, the majority concludes that the "sole argument advanced here on appeal by Erby has already been addressed by our court." I disagree. While *Small* and *Cagle* are factually similar to the instant case, they do not squarely address the precise question raised in this case: whether, on the basis of an "unconfirmed" return on the online insurance verification system, Trooper Guest had probable cause to stop the vehicle in which Erby was a passenger.

Specifically, in *Small*, the search of the insurance database produced a return that explicitly advised the officer that Small's insurance was "canceled." Conversely, the database in the current case reported that the insurance on the vehicle was "unconfirmed" and that insurance policies may be in existence that were not available to the system at that time. Stated differently, the database merely informed Trooper Guest that there may or may not be current insurance on the vehicle. Thus, there was a degree of certainty in *Small* that simply is not present with the "unconfirmed" result in the instant case.

In *Cagle*, the officer effectuated his traffic stop based on a number of factors, including the defendant's erratic driving and his behavior once he saw the officer's car. Only after observing those things did the officer run Cagle's tags and discover that there was no insurance on file for the vehicle. Moreover, in affirming, this court noted that the State had elicited, without objection, the officer's testimony that "he routinely runs tags for proof of insurance, and in his experience, the database is accurate more than 90 percent of the time." *Cagle*, 2019 Ark. App. 69, at 6, 571 S.W.3d at 51. In this case, not only was there no other basis for the stop, but there was also no testimony regarding the reliability of the online insurance database.

As noted above, probable cause is defined as "facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected." *Prickett*, 2016 Ark. App. 551, at 3, 506 S.W.3d at 872. While it is true that an officer's assessment of probable cause to make a traffic stop "does not depend upon whether the defendant is actually guilty of the violation that was the basis for the stop," the officer must nevertheless have "probable cause to believe that a traffic violation ha[s] occurred." *Travis v. State*, 331 Ark. 7, 10–11, 959 S.W.2d 32, 34–35 (1998).

Here, the only articulated reason for Trooper Guest to have stopped the vehicle is the unconfirmed insurance status. There was, for example, no broken taillight, no illegal license plate cover, and no failure to use a turn signal. Trooper Guest just happened to run the tags on a passing car and got a hit that reported "unconfirmed." But unconfirmed does not equal uninsured as the disclaimer clearly explained. Thus, Trooper Guest stopped the vehicle due to pure speculation about the vehicle's insurance status.

The majority bolsters its probable-cause finding by relying on a statutorily created rebuttable presumption[1] that a motor vehicle or its operation is uninsured if "[t]he online insurance verification system fails to show current insurance coverage for the driver or the insured." Ark. Code Ann. § 27-22-104(a)(2)(ii) (Repl. 2014). However, there is nothing in the record to indicate that Trooper Guest was even aware this presumption existed at the time he stopped the vehicle, let alone that he relied on it. First, Trooper Guest never testified that he relied on the presumption in conducting the stop. Second, the printout reflecting the "unconfirmed" status of the vehicle insurance did not advise Trooper Guest that he was entitled to presume "unconfirmed" meant uninsured. Instead, it did the opposite because it informed him that "unconfirmed" meant that valid insurance might actually exist. Thus, in my opinion, the majority's reliance on the rebuttable presumption is misplaced.

Furthermore, Trooper Guest offered no testimony to establish his familiarity with the ACIC/NCIC insurance database or the reliability of the system. Without any other evidence illustrating the accuracy of the database, establishing the timeliness of the information within the database, or depicting how often those using the database were told that the insurance information was unconfirmed but yielded violations, there simply was no basis on which to believe the driver of the vehicle was violating the law.

---

[1]Although not raised by the parties, I also question the validity of the rebuttable presumption as it applies to law enforcement officers. More specifically, I question whether a statutory presumption can create probable cause where it otherwise would not constitutionally exist. As the circuit court stated in this case, "back in the old days when you didn't have the ACIC and NCIC supposedly keeping up with insurance, tags, and driver's license, *certainly they couldn't have stopped him just to see if had valid insurance*, or valid tags." (Emphasis added.)

9

In short, at the time Trooper Guest initiated the stop in this case, he had absolutely no idea whether the vehicle in which Erby was a passenger was insured. I frankly cannot hold that a person's constitutional rights can lawfully be curtailed on the basis of such tenuous evidence.

Nevertheless, I must concur because Erby failed to challenge the circuit court's reliance on the good-faith exception to the exclusionary rule. At trial, the circuit court found that Trooper Guest was entitled to rely on the information contained in the insurance database and, in doing so, "that the officer acted in good faith whenever he made the stop." Erby did not challenge the court's good-faith determination either below or on appeal.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.